NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NEW JERSEY PROTECTION & ADVOCACY, INC., et. al, | : : : : | |
| Plaintiffs, | : : | Civil No. 05-4723 (AET) |
| v. | : : | **OPINION & ORDER** |
| Jennifer VELEZ, Commissioner of Human Services for the State of New Jersey, et. al, | : : : : | |
| Defendants. | : : | |

THOMPSON, J.

This matter has come before the Court upon Plaintiffs Disability Rights New Jersey, Inc. ("Disability Rights"), Allison Harmon, and Fredrena Thompson's Motion to Exclude the Testimony of Defendant's Expert Robert Gettings [docket # 55]. The Court has decided this Motion upon consideration of the submissions of both parties, without oral argument, pursuant to Fed. R. Civ. P. 78(b).

**I.    Background**

Plaintiffs initiated this lawsuit to contest the speed, or lack thereof, at which the State of New Jersey and the Division of Human Services have transitioned developmentally disabled persons from developmental centers to community placements. In addition, Plaintiffs challenge New Jersey's admissions and review process for individuals being admitted to developmental centers. After an extended period of discovery, both Plaintiffs and Defendants filed motions for summary judgment on March 25, 2010. Plaintiffs filed this motion to preclude the expert testimony of Robert Gettings in conjunction with their motion for summary judgment.

According to Mr. Gettings' expert report, he is prepared to offer an opinion on the adequacy of Defendants plan to integrate institutionalized disabled persons into the community and on the effectiveness of the implementation of the plan.

## II. Analysis

The Court's analysis is guided by the standards set out in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In order to testify as an expert witness, an individual must be properly qualified, the testimony must be based upon sufficient facts or data and be the product of reliable principles or methods, and the witness must have reliably applied the methodology to the facts of the case. *Id*.

### A. *Qualifications*

An expert must have "specialized expertise" that would assist the trier of fact. *Schneider v. Fried*, 230 F.3d 396, 405 (3d Cir. 2003). Plaintiffs argue that Mr. Gettings' lacks adequate qualifications despite his 37-year career as a lobbyist and advisor to various states on the topic of disability services because he has never analyzed or been involved in the implementation of a state's Olmstead plan. (Pls.' Br. 10 [docket # 55-2].)

Mr. Gettings is a private consultant who previously served as the Executive Director for the National Association of State Directors of Developmental Disabilities Services ("National Association"), where he worked for thirty-seven years. The National Association represents the interests of state developmental disability agencies in Washington, D.C. and facilitates communication among the states regarding best practices for serving individuals with lifelong disabilities. (Mot. Preclude Testimony Ex. B 4 (hereinafter, "Gettings Reports") [55-5].) Mr. Gettings has been involved in the development of federal financial solutions to provide disability

services.  (*Id.* at 5.)  He has also provided on-site technical assistance to states that were transitioning people out of institutions and expanding community-based services.  (*Id.*)

Given Mr. Gettings' extensive experience in the field of disability services, the Court sees no need to exclude Mr. Gettings' testimony for a lack of qualifications.  Although Mr. Gettings has never previously been hired as a consultant to evaluate an *Olmstead* plan, his prior experience would have necessitated extensive knowledge and familiarity with *Olmstead* plans in general.  (*See id.* at 51 (basing conclusions on "wide-ranging knowledge of deinstitutionalization initiatives in many other states, including the contents of *Olmstead* and related planning and implementation documents").)

### B. *Reliability*

#### 1. Generally

Rule 702 requires that an expert's testimony be "the product of reliable principles and methods."  Fed. R. Evid. 702.  Plaintiffs argue that Mr. Gettings' testimony would be unreliable because of his lack of qualifications and because his conclusions were based solely based on the "self-report" of Defendants and their agents.  (Pls.' Br. 13.)  As discussed above, the Court has already found that Mr. Gettings' is adequately qualified.  Thus, the Court will now focus solely on the issue of whether the source of the information or Mr. Gettings' methodology makes his opinions unreliable.

According to Mr. Gettings' expert report, he formed his opinions after an extensive review of documents, which included the Path to Progress Plan, monthly statistical reports, depositions of New Jersey officials and reports tracking the progress of those individuals who had been transitioned into the community.  (Gettings Report 5-7.)  In addition, he interviewed a

number of officials from within the Division of Human Services and other selected states.  (*Id.* 7-9.)  Plaintiffs generally object to Mr. Gettings' opinions as being based only on information provided by Defendants and their agents.  Plaintiffs particularly object to Mr. Gettings' practice of providing copies of his interview notes to the interview subjects, who then provided him supplemental information and, in some cases, their opinions on the subject which were, on at least on one occasion, adopted into his report.  (Pls.' Br. 15-18.)  Plaintiffs also object to the fact that the sampling of states Mr. Gettings compared New Jersey against was selected by Defendants' counsel.  (*Id.* 14-15.)

It would be troubling if Mr. Gettings' analysis was guided solely by the considerations of counsel rather than his own independent assessment of what information and analysis was necessary to come to an informed opinion.  However, Mr. Gettings' did explain that all of the chosen comparison states were ones that had recently completed efforts to close state-operated residential centers, that still had open developmental centers, and that were heavily populated, all factors that made them similar to New Jersey.  (Mot. to Preclude Testimony Ex. C 101:24-102:11 (hereinafter, "Gettings Deposition") [55-6].)  Thus, Gettings' opinions that are based on his comparison of New Jersey to these other states is not inherently unreliable.  Similarly, the fact that Gettings' drew his information from interviews with the Defendants' agents does not make his opinions inherently suspect, as the individuals he interviewed would be expected to be the best and most useful sources of information regarding New Jersey's Path to Progress plan.

Plaintiffs also argue that Mr. Gettings' opinions are unreliable because they conflict with the undisputed facts.  Specifically, Plaintiffs contend that Mr. Gettings' conclusion that New Jersey is reasonably implementing its Path to Progress plan is impossible to reconcile with the

fact that New Jersey has placed a significantly lower number of developmentally disabled individuals into the community than called for in the plan.  The Court recognizes, however, that Mr. Gettings' conclusions are more nuanced than a simple mathematical comparison of targeted versus actual community placements.  Mr. Gettings' conclusions regarding New Jersey's implementation of the Path to Progress take into account the state's fiscal crisis, unexpected complications that have slowed community placements, the success of placements that have been completed, and New Jersey's overall progress in developing community-based services.  In light of the many factors that can affect the type of statewide redistribution of services called for by the Path to Progress plan, the Court believes that Mr. Gettings' opinion that Defendants have reasonably implemented the plan to the extent possible despite is not impossible to reconcile with the State's failure to meet certain targets for community placements.

### 2. Financial Analysis

Plaintiffs' motion includes the more specific request that Mr. Gettings' be precluded from providing any fiscal analysis testimony at trial because he has admitted he did not conduct an in-depth analysis of the Department's fiscal management policies and practices.  (Pls.' Br. 11.) Defendants counter that they do not intend to have Mr. Gettings' testify on the potential financial effect of ordering more community placements, but that he is qualified to opine on whether Defendants are effectively implementing the Path to Progress plan in light of the funding received.  (Opp. Br. 24.)  The Court agrees that Mr. Gettings' is qualified to offer a general opinion as to whether Defendants' have properly drawn down and utilized the available sources of funding for community-based services.  However, any detailed financial analysis Mr. Gettings' could offer would be unreliable if based only on "some general idea of how the

budgeting process worked within the state." (Gettings Deposition150:14-151:3.)

### C. Fit

Finally, Plaintiffs argue that Mr. Gettings' testimony should be excluded because his conclusions do not "fit" this litigation and would not assist the trier of fact to understand the evidence. (Pls.' Br. 21.) An expert's testimony "fits" the case if there is a connection between the proffered testimony and an issue that is in dispute. *In re TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999). It is true that several of Mr. Gettings' conclusions appear to touch on issues that are undisputed, such as the comprehensiveness of New Jersey's Path to Progress plan, the process which has been developed to transition individuals into the community, and the success of placements that have actually occurred. (Gettings Report 51-57.) However, Mr. Gettings' report also opines on a number of other subjects, such as Defendants' efforts to expand access to services in the community and the impact of factors which have delayed the transition process. Mr. Gettings' opinion on these factors may well assist the trier of fact when it is determining whether Defendants have a defense to Plaintiffs' claims. *See Frederick L. v. Dep't of Pub. Welfare*, 364 F.3d 487, 496 (3d Cir. 2004) (upholding finding that fundamental alteration defense had been adequately shown based on analysis of a "host of relevant factors," including evidence that budget allocation had been responsibly spent and ability to increase community care placements had been hampered by community opposition.)

For the reasons discussed above, the Court will not exclude Mr. Gettings' testimony at this time. Plaintiffs' issues with Mr. Gettings' proposed testimony may be adequately dealt with by cross-examination, particularly in the context of a bench—as opposed to a jury—trial. However, assuming this matter proceeds to trial, it is quite possible that the issues to be resolved

will have been narrowed and the relevancy and need for Mr. Gettings' testimony will have become clearer to both the parties and the Court.[1] Thus, the Court will allow Plaintiffs to reraise specific objections to Mr. Gettings' testimony prior to trial if they so desire and will deny the present motion without prejudice.

### III.     Conclusions

For the reasons discussed above, and for good cause shown,

IT IS this 8th day of August, 2010;

ORDERED that Plaintiffs' Motion to Exclude the Testimony of Defendant's Expert Robert Gettings [55] is DENIED without prejudice.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.

---

[1] Both Plaintiffs and Defendants have a motion for summary judgment pending before the Court.