NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DISABILITY RIGHTS NEW JERSEY, INC., et al., | : : : : | |
| Plaintiffs, | : : | Civil No. 05-4723 (AET) |
| v. | : : : | **OPINION & ORDER** |
| Jennifer VELEZ, in her official capacity as Commissioner of the New Jersey Department of Human Services, et al., | : : : : | |
| Defendants. | : : | |

THOMPSON, U.S.D.J.

This matter has come before the Court upon Plaintiffs Disability Rights New Jersey, Inc. ("Disability Rights"), Allison Harmon, and Fredrena Thompson's (collectively, "Plaintiffs") Motion for Summary Judgment [docket # 54] and Defendants Jennifer Velez, in her official capacity as Commissioner of the New Jersey Department of Human Services, and the State of New Jersey's (together, "Defendants") Motion for Summary Judgment [56]. The Court has decided the motions after consideration of the submissions of both parties and after hearing oral argument on September 22, 2010. For the reasons given below, Plaintiffs' Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is denied in part and granted in part.

## BACKGROUND

Plaintiffs' suit against Defendants contends that the institutionalization of developmentally disabled individuals in New Jersey violates Title II of the Americans with

Disabilities Act ("Title II"), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, the Medicaid Act, 42 U.S.C. § 1396, and Plaintiffs' Fourteenth Amendment due process rights.  Specifically, Plaintiffs allege that institutionalizing developmentally disabled persons rather than integrating them into community placements violates Title II, Section 504, and the Medicaid Act, and that the process under which the State admits individuals into institutions and its failure to have sufficient periodic review after institutionalization violate Title II and the Fourteenth Amendment.

Defendants have now filed a motion for summary judgment on all counts, arguing that they are immune from suit under Title II and Section 504 due to the Eleventh Amendment, that they are complying with their obligations under Title II and Section 504 by moving individuals into community placements to the best of their ability given their current budget constraints, that the Medicaid Act does not require them to provide Plaintiffs with the type of services they are requesting, and that the due process they provide at the developmental centers is sufficient. Plaintiffs have also filed a motion for summary judgment, contending that Defendants do not currently have an effectively working plan to transition developmentally disabled individuals into the community, that Defendants have not successfully established an affirmative defense for their failure to move individuals into community placements, and that the admissions and periodic review procedures provided at the developmental centers are facially inadequate.  The United States has intervened to address Defendants' argument that Title II does not validly abrogate a states' Eleventh Amendment immunity.  In addition, the United States has filed an amicus brief in support of Plaintiffs' motion for summary judgment on Counts I and II of the Amended Complaint [17] (the Title II and Section 504 *Olmstead* claims).

ANALYSIS

I.      **Legal Standard for Summary Judgment**

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, a district court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

To survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party that will bear the burden of proof at trial "must make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. This requires that there be more than a "mere existence of a scintilla of evidence" supporting the non-moving party. *Anderson*, 477 U.S. at 252.

II.     **Sovereign Immunity**

Defendants argue that the Eleventh Amendment provides them with immunity from suit under Title II and Section 504. Plaintiffs, however, ask only for injunctive and declaratory relief and therefore may validly bring their Title II and Section 504 claims against Defendant Velez pursuant to *Ex parte Young*. In addition, the State has waived its sovereign immunity under Section 504 by accepting federal funds for its programs. Section 504 clearly states that "[a]

State shall not be immune under the Eleventh Amendment . . . from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d-7(a)(1). This 1986 amendment to the Rehabilitation Act put the State on notice that by accepting federal funds under Section 504 it was subjecting itself to suit in federal court. *Koslow v. Commonwealth*, 302 F.3d 161, 170 (3d Cir. 2002).

In order for the State to be amenable to suit under Title II, Congress must have validly exercised its authority pursuant to § 5 of the Fourteenth Amendment to abrogate the State's Eleventh Amendment immunity. The Court believes that it is not necessary to reach this issue at this time as the State's waiver of immunity under Section 504 means that it is clearly not immune from suit in this matter. The Third Circuit has consistently treated the mandates of the Section 504 and Title II as identical, requiring the same analysis and providing for the same remedies. *Frederick L. v. Dep't of Pub. Welfare*, 364 F.3d 487, 490 n.2 (3d Cir. 2004) (hereinafter, *Frederick L.* I); *Penn. Prot. & Advocacy, Inc. v. Penn. Dep't of Public Welfare*, 402 F.3d 374, 379 n. 3 (3d Cir. 2005). The Court therefore believes it need not decide the constitutional issue in order to deny Defendants' Motion for Summary Judgment.[1]

### III.   *Olmstead* - Counts I and II

Title II prohibits any public entity from discriminating against a qualified individual with a disability and requires that a public entity administer services and programs in the most integrated setting appropriate.[2]  42 U.S.C.A. § 12132; 28 C.F.R. § 35.130(d). In *Olmstead v.*

---

[1] If it becomes necessary, the validity of Congress's abrogation of the State's sovereign immunity in Title II may be addressed in a later proceeding.

[2] The most integrated setting appropriate is defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. pt. 35, App. A. In addition, the implementing regulations require a public entity to make

*L.C. and E.W.*, 527 U.S. 581 (1999), the Supreme Court, held that the unnecessary institutionalization of the disabled was a form of discrimination prohibited by Title II. The Supreme Court also held that a state may raise a "fundamental-alteration" defense by showing that given the available resources and the State's responsibility for the care of a diverse population of people with mental disabilities, providing immediate relief for plaintiffs would be inequitable. *Id.* at 604-06.

There are three elements required to show that a defendant is violating the Title II and the Section 504 under *Olmstead* by providing services to an individual in an institution rather than a community setting.[3] First, community placement must be appropriate for the individual. *Olmstead*, 527 U.S. at 587. Second, community placement cannot be opposed by the affected individual. *Id.* Third, the placement must be able to be reasonably accommodated, taking into account the resources available to the state and the needs of others with mental disabilities. *Id.* This third element usually arises in the context of the assertion of a fundamental alteration defense, on which defendant bears the burden of proof.

The Third Circuit has held that the existence of "'a comprehensive, effectively working plan for placing qualified persons with mental disabilities in less restrictive settings'" is a necessary element of a successful fundamental alteration defense. *Frederick L. v. Dep't of Pub. Welfare*, 422 F.3d 151, 157 (3d Cir. 2005) (hereinafter, *Frederick L.* II) (quoting *Olmstead*, 527

---

reasonable modifications when necessary to avoid discrimination on the basis of disability, unless the modification would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

[3]Although *Olmstead* only addressed the requirements of Title II, as mentioned above, the Third Circuit has consistently treated the mandates of Section 504 and Title II as identical and as requiring the same analysis. *Frederick L.* I, 364 F.3d at 490 n.2; *Penn. Prot. & Advocacy*, 402 F.3d at 379 n. 3.

U.S. at 605-06). Such a plan must demonstrate a commitment to community placement for "which it can be held accountable by the courts." *Penn. Prot. & Advocacy*, 402 F.3d at 381; *Frederick L.* I., 364 F.3d at 500.

Once a government entity establishes the existence of an adequate *Omstead* plan, a court must evaluate a number of factors in determining whether a modification would result in a fundamental alteration to services. These factors include the resources available to the state, the range of services provided to others with mental disabilities, and the State's responsibility to mete out services equitably. *Olmstead*, 119 S. Ct. at 597; *see also Penn. Prot. & Advocacy*, 402 F.3d at 380. Budgetary constraints alone are insufficient to establish a fundamental alteration defense. *Frederick L.* I, 364 F.3d at 495; *Penn. Prot. & Advocacy*, 402 F.3d at 380.

The Court finds that material questions of fact exist that prevent it from being able to grant summary judgment in favor of either party on the *Olmstead* claims. These material questions of fact include whether New Jersey has an *Olmstead* plan that can be considered to be "effectively working" given the recent fiscal crisis and budget cuts and whether ordering the requested relief would result in a fundamental alteration to services the State provides to other individuals. For these reasons, the Court will deny both Plaintiffs' and Defendants' motions for summary judgment on Counts I and II.

**IV.    The Medicaid Act - Count III**

Medicaid is a voluntary federal-state program, however, once a state elects to participate in Medicaid it must comply with a number of federal statutory and regulatory requirements. Each state must adopt a plan for provision of "medical assistance." 42 U.S.C. § 1396a. A state may request approval from the Center for Medicare and Medicaid Services ("CMS") to waive

certain Medicaid Act requirements in order to obtain Medicaid funding for home and community-based services. 42 U.S.C. § 1396n(c). This is known as the Medicaid Home and Community Based Waiver program ("waiver program"). The services that Plaintiffs in this case seek access to are provided under New Jersey's waiver program.

The Medicaid Act defines "medical assistance" as "payment of part or all of the cost of the following care and services . . . ." 42 U.S.C.A. § 1396d(a). Several circuits have held that, given this definition, a state's obligation to provide "medical assistance" refers to financial assistance rather than actual medical services.[4] *Mandy R. v. Owens*, 464 F.3d 1139, 1143 (10th Cir. 2006); *Bruggeman v. Blagojevich*, 324 F.3d 906, 910 (7th Cir. 2003); *Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006). The Third Circuit appears to have implicitly adopted the reasoning of these circuits. *See Newark Parents Ass'n v. Newark Public Schools,* 547 F.3d 199, 211 (3d Cir. 2008) (noting that "the provisions of the Medicaid Act . . . deal[] with what are essentially financial benefits" and referring to § 1396d(a)'s definition of "medical assistance")). Thus, a state is in compliance with the Medicaid Act as long as it is reasonably promptly reimbursing individuals for qualified services that they are receiving.

Plaintiffs do not contend that Defendants have failed to reimburse them or to provide financial assistance. Rather, they complain that they are being hindered from accessing specific medical services available under New Jersey's waiver program. Because Plaintiffs are not requesting the type of assistance—financial assistance—provided for by the Medicaid Act, the Court finds that Plaintiffs do not have a valid claim and will grant summary judgment in favor of

---

[4] A few circuits and district courts have gone in the other direction and have treated the Medicaid Act as requiring a state to provide certain actual medical services. *Bryson v. Shumway*, 308 F.3d 79, 81, 88-89 (1st Cir. 2002); *Doe v. Chiles*, 136 F.3d 709, 714, 717 (11th Cir. 1998); *Boulet v. Cellucci*, 107 F. Supp. 2d 61, 79 (D. Mass. 2000).

Defendants. The type of injury complained of by Plaintiffs is more appropriately addressed under Title II or Section 504.

### V.     Fourteenth Amendment Due Process - Counts IV

Plaintiffs contend that the Due Process Clause of the Fourteenth Amendment requires developmentally disabled person to be provided with a hearing, notice, representation and a decision by an impartial decision-maker prior to being committed to a developmental center. Several courts have recognized the need for some level of due process in similar circumstances. *See, e.g.*, *Parham v. J.R.*, 442 U.S. 584 (1979); *Clark v. Cohen*, 794 F.2d 79 (3d Cir. 1986); *Porter v. Knickrehm*, 457 F.3d 794 (8th Cir. 2006)*; Doe v. Austin*, 848 F.2d 1386 (6th Cir. 1988). Determining the amount of due process required under the Fourteenth Amendment requires a situation-specific balancing of the factors spelled out in *Matthews v. Eldridge*, 424 U.S. 319 (1976). These are as follows:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335. The fundamental requirement of due process is the "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333.

The Court believes that summary judgment on this count would be inappropriate without further development of the record to resolve all material questions of fact. The Court is unable to decide at this time whether the procedures set out in the Division of Human Services' Circular # 17 and the New Jersey Administrative Code provide the requisite level of due process. Open questions of fact include whether the individual making the determination that an emergency

-8-

placement into a developmental center is a neutral fact-finder, whether individuals being placed in developmental centers are given notice of how they can contest a placement, the sufficiency of the procedures under which placements are periodically reviewed once an individual is already in a developmental center, and the ability of an individual to challenge a placement if his or her guardian has consented to the placement.  Because the Court cannot determine that either party is entitled to judgment as a matter of law, it will deny both Plaintiffs' and Defendants' motions for summary judgment on Count IV.

## VI.    Admissions Procedures are Discriminatory - Count V

Plaintiffs' final count alleges that Defendants are discriminating against the developmentally disabled because the developmental centers' admission procedures do not provide the same sort of due process granted to individuals being admitted to psychiatric hospitals or other institutions.  To succeed on such a claim, Plaintiffs must show that their disability played a role in Defendants' decision to treat them differently.  *See Community Services, Inc. v. Wind Gap Mun. Authority*, 421 F.3d 170, 177 (3d Cir. 2005).  This question is not resolved by the evidence submitted by the parties to support their motions for summary judgment.  The Court will therefore deny both Plaintiffs' and Defendants' motion for summary judgment on Count V.

## CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS on this 24th day of September, 2010

ORDERED that Plaintiffs' Motion for Summary Judgment [54] is DENIED; and it is

ORDERED that Defendants' Motion for Summary Judgment [56] is DENIED IN PART and GRANTED IN PART; and it is

ORDERED that Plaintiffs' Medicaid Act claim (Count III of the Amended Complaint) is DISMISSED.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.