NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————
                                                    :
DISABILITY RIGHTS NEW JERSEY,      :
INC., et. al,                                         :
                                                    :
        Plaintiffs,                              :         Civil No. 05-4723 (AET)
                                                    :
            v.                                      :         **OPINION & ORDER**
                                                    :
Jennifer VELEZ, in her official capacity   :
as Commissioner of the New Jersey        :
Department of Human Services, et. al,    :
                                                    :
        Defendants.                            :
——————————————————— :


THOMPSON, U.S.D.J.

## I.        INTRODUCTION

        This matter has come before the Court upon Plaintiffs Disability Rights New Jersey, Inc. ("Disability Rights"), Allison Harmon, and Fredrena Thompson's Motion for Reconsideration under Federal Rule of Civil Procedure 59(e) [docket #84-1].  Defendants Jennifer Velez and the State of New Jersey oppose the motion [86].  The Court has decided the motion upon the submissions of both parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b).  For the reasons detailed below, Plaintiffs' Motion for Reconsideration is granted.


## II.       BACKGROUND

        The Court assumes that the parties are familiar with the factual and procedural background of this matter.  Plaintiffs' suit against Defendants contends that the institutionalization of developmentally disabled individuals in New Jersey violates Title II of the Americans with

Disabilities Act ("Title II"), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, the Medicaid Act, 42 U.S.C. § 1396, and Plaintiffs' Fourteenth Amendment due process rights.  Specifically, Plaintiffs allege that institutionalizing developmentally disabled persons rather than integrating them into community placements violates Title II, Section 504, and the Medicaid Act, and that the State's process for admitting individuals into institutions and the lack of sufficient periodic review post-institutionalization violate Title II and the Fourteenth Amendment.

On March 25, 2010, the parties moved for summary judgment [54; 56].  On September 24, 2010, this Court granted Defendants' summary judgment motion solely as to the Medicaid claim [82].  Specifically, we found that the Medicaid Act defines "medical assistance" as "payment of part or all of the cost of the following care and services . . . ." 42 U.S.C. § 1396d(a).  We further relied on Third Circuit case law indicating that "the provisions of the Medicaid Act . . . deal[] with what are essentially financial benefits," *Newark Parents Ass'n v. Newark Pub. Sch.*, 547 F.3d 199, 211 (3d Cir. 2008).  We considered this statement to implicitly adopt the interpretation offered by other circuits that "medical assistance" refers to financial rather than actual medical services.  *See, e.g., Mandy R. v. Owens*, 464 F.3d 1139, 1143 (10th Cir. 2006); *Bruggeman v. Blagojevich*, 324 F.3d 906, 910 (7th Cir. 2003); *Westside Mothers v. Olszewski*, 454 F.3d 532, 540 (6th Cir. 2006). Because Plaintiffs had argued that they were hindered from accessing specific medical services under New Jersey's waiver program, we concluded that they had failed to state a claim requesting the appropriate type of assistance—financial assistance—under the Medicaid Act.

Plaintiff now argues that reconsideration is appropriate in light of the fact that the definition of "medical assistance" has been amended to include the actual provision of medical services.  (Br. in Supp. 3–5).

III.     ANALYSIS

**A.  Legal Standard for Motion for Reconsideration**

A motion for reconsideration, pursuant to Fed. R. Civ. P. 59(e) and L. Civ. R. 7.1, may be brought on three grounds: (1) an intervening change in controlling law, (2) evidence not previously available, or (3) to correct a clear error of law or prevent manifest injustice.  *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  Reconsideration is an extraordinary remedy which is to be granted "very sparingly."  *Interfaith Comty. Org. v. Honeywell Intern., Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002).  Here, Plaintiffs request reconsideration based on the first and third grounds.

A motion for reconsideration is not a vehicle for raising new matters or arguments that could have been raised before the original decision was made, *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001), nor is it an opportunity to ask a court to rethink what it has already thought through.  *Oritani S & L v. Fidelity & Deposit*, 744 F. Supp. 1311, 1314 (D.N.J. 1990).  Reconsideration based on a clear error of law may be granted only if there is a dispositive factual or legal matter that was presented but not considered which would have reasonably resulted in a different conclusion by the court.  *Champion Laboratories, Inc. v. Metex Corp.*, 677 F. Supp. 2d 748, 750 (D.N.J. 2010).  However, a district court has considerable discretion to decide whether reconsideration is necessary to prevent manifest injustice.

**B.  The Amendment of the Definition of "Medical Assistance"**

Plaintiffs argue that there has been an intervening change in controlling law and that the Court must correct a clear error of law.  (Br. in Supp. 3.)  Specifically, Plaintiffs argue that the Patient Protection and Affordable Care Act ("PPACA"), enacted on March 23, 2010, changed the definition of "medical assistance" in 42 U.S.C. § 1396d(a) from "payment of part or all of the cost of the following care and services" to "payment of part or all of the cost of the following care and

services *or the care and services themselves, or both.*"  42 U.S.C. § 1396d(a) (emphasis added).
Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 (March 23, 2010).

Defendants respond that, because the Plaintiffs are seeking services under the State's
waiver plan, the Court must decide what "medical assistance" means under the waiver section
provided in 42 U.S.C. § 1396n(c)(1), as opposed to 42 U.S.C. § 1396d(a).  (Opp'n Br. 4.)  Section
1396n(c)(1) states: "The Secretary may by waiver provide that a State plan approved under this
subchapter may include as 'medical assistance' under such plan *payment for part or all of the cost*
of home or community-based services . . . ."  42 U.S.C. § 1396n(c)(1) (emphasis added).
Defendants further point out that, while Congress amended § 1396d(a), it left § 1396n(c)(1)
untouched.  (Opp'n Br. 4.)  Accordingly, Defendants argue that, regardless of any amendment to §
1396d(a), Plaintiffs have failed to state a claim under § 1396n(c)(1) by not requesting payment for
the costs of home or community-based services.  (*Id.* at 5.)

We find the Defendants' argument unavailing, although we conclude that reconsideration
is appropriate not because of an intervening change or clear error of law as Plaintiffs suggest, but
rather to prevent "manifest injustice."  There has not been an intervening change in controlling
law, because the PPACA was enacted on March 23, 2010, prior to the parties' Motions for
Summary Judgment and this Court's Opinion.  Likewise, there was no clear error of law in this
Court's opinion because the effect of the PPACA on prior case law from the Third Circuit and
other circuits was not raised by Plaintiffs in their initial moving papers.  However, for the reasons
that follow, we conclude that it would result in manifest injustice were we to maintain our
previous interpretation of "medical assistance."

Section 1396d(a) is a definitional section.  Typically, definitional sections are not self-
contained, and instead apply to the other provisions of the statute.  *See, e.g., Gerbier v.* Holmes,
280 F.3d 297, 303 (3d Cir. 2002) ("The definition of "aggravated felony" is set forth in § 1101 of

the INA, the general definitional section applicable to the entire INA."). In this instance, § 1396d(a) specifically states that the definitions it provides apply "[f]or purposes of this subchapter." 42 U.S.C. § 1396d. The word "subchapter" refers to Subchapter XIX, codified as § 1396, which includes § 1396n(c)(1). The question we must resolve, then, is whether § 1396n(c)(1) creates a specific exception to § 1396d(a)'s general definition of "medical assistance." We conclude that, to the contrary, § 1396n(c)(1) merely states an example of the type of medical assistance that a State plan may provide. Although the example of medical assistance that § 1396n(c)(1) cites is "payment," this section uses precatory language in stating, "The Secretary *may* by waiver provide that a State plan approved under this subchapter *may* include as 'medical assistance' under such plan payment for part or all of the cost of home or community-based services . . . ." 42 U.S.C. § 1396n(c)(1) (emphases added). The plain meaning of this section is that "payment" is one, but not the only, form of medical assistance allowed under a waiver plan.[1]

This textual interpretation is confirmed by the legislative history of the amendment, which states, "Some recent opinions have . . . questioned the longstanding practice of using the term 'medical assistance' to refer to both the payment for services and the provision of services themselves. . . . [T]his reading makes some aspects of the rest of Title XIX difficult and, in at least one case, absurd." H.R. Rep. No. 299, 111th Cong., 1st Sess. 2009, at 693–94, 2009 WL 3321420 (Oct. 14, 2009). The House Report's reference to the effect of this reading on "the rest of Title XIX" makes clear that Congress did not intend for the amendment's effect to be confined to § 1396d(a) alone. It would be contrary to Congressional intent to conclude that § 1396n(c)(1)'s reference to "payment" operates to preclude Plaintiffs from requesting actual "care or services" as

---

[1]   We recognize that, under the *expressio unius est exclusio alterius* canon of construction, the inclusion of the financial type of "medical assistance" might suggest that the other types do not apply. However, the broader definition of "medical assistance" in § 1396d(a) coupled with the precatory language of § 1396n(c)(1) cautions against the application of that canon in this instance.

included in the definition of "medical assistance" under § 1396d(a).  Accordingly, because "medical assistance" includes not only financial assistance but also actual care or services, Plaintiffs have properly stated a claim under the Medicaid Act.

### C.  Availability of Services Under the Waiver

Defendants argue that, even if the amended version of 42 U.S.C. § 1396d(a) supports Plaintiffs' interpretation, the Court must nonetheless conclude that summary judgment was warranted because Plaintiffs have not shown how the Medicaid Act would require Defendants to "promptly provide services to Plaintiffs' constituents" under the waiver.  (Br. in Opp'n 6.)  In support of this position, Defendants essentially reassert the arguments made in support of their previous Motion for Summary Judgment.  Namely, Defendants argue that the State does not have to provide waiver services that are unavailable, that the services sought by the Plaintiffs are unavailable due to a lack of funding.  (Br. in Opp'n 8–11.)  Accordingly, they argue, the State does not need to inform individuals of these nonexistent alternatives to institutionalization, much less provide unavailable services.  (*Id.*)  Plaintiffs assert in reply that lack of funding does not excuse a State from providing waiver services.  (Reply Br. 3–4) [89].  To the contrary, they argue, as long as there are unfilled waiver slots, eligible individuals have a right to choose from the alternative types of services specified under the waiver, as well as a right to receive those services reasonably promptly.  (*Id.*)  The parties' arguments simply reveal that questions of fact remain as to whether slots functionally exist within the State's waiver cap, whether individuals are being informed of services under the waiver, and whether individuals have received or will receive such services promptly.  These questions are relevant to determining whether the State is in compliance with the "free choice" and "reasonable promptness" requirements under the Medicaid Act.  42 U.S.C. § 1396n(c)(2)(C); 42 U.S.C. § 1396a(a)(8).

Accordingly, in order to prevent manifest injustice, the Plaintiffs' Motion for

Reconsideration is granted and the Plaintiffs' Medicaid claim (Count III of the Amended Complaint) is reinstated.

IV.   <u>CONCLUSION</u>

For the reasons stated above, and for good cause shown,

IT IS on this 30th day of November, 2010

ORDERED that Plaintiffs' Motion for Reconsideration [84] is GRANTED; and it is further

ORDERED that Plaintiffs' Medicaid Act claim (Count III of the Amended Complaint) is hereby reinstated.

_____*/s/ Anne E. Thompson*_____
ANNE E. THOMPSON, U.S.D.J.